UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Assad Awaijane, Robert Awaijane, Anisse
Campbell, Darius Campbell, Wayne Green, and
Merrick Jackson,

        Plaintiffs,
v.

Andrew Bittell, acting in his individual capacity
as a Minneapolis Police Officer; Michael Osbeck,
Jr., acting in his individual capacity as a
Minneapolis Police Officer; Christopher
Cushenbery, acting in his individual capacity as a
Minneapolis Police Officer; Justin Stetson, acting
in his individual capacity as a Minneapolis Police
Officer; Kristopher Dauble, acting in his
individual capacity as a Minneapolis Police
Officer; Nathan Sundberg, acting in his individual
capacity as a Minneapolis Police Officer; Mark
Ringgenberg, acting in his individual capacity as a
Minneapolis Police Officer; Xavier Rucker, acting
in his individual capacity as a Minneapolis Police
Officer; Matthew Severance, acting in his
individual capacity as a Minneapolis Police
Officer; Ronald Stenerson, acting in his individual
capacity as a Minneapolis Police Officer; Johnny
Mercil, acting in his individual capacity as a
Minneapolis Police Officer; Steven Mosey, acting
in his individual capacity as a Minneapolis Police
Officer, John Does 1-10, acting in their individual
capacities as Minneapolis Police Officers; and the
City of Minneapolis,

        Defendants.

MEMORANDUM OPINION
AND ORDER
Civil No. 23-2892 ADM/JFD

_____

Eric A. Rice, Esq., Law Office of Eric A. Rice, LLC, St. Paul, MN, on behalf of Plaintiffs.

Munazza Humayun, Esq., and Gregory P Sautter, Esq., Minneapolis City Attorney's Office, Minneapolis, MN, on behalf of Defendants.

_____

## I.  INTRODUCTION

On February 21, 2024, the undersigned United States District Judge heard oral argument on Defendants Nathan Sundberg ("Sundberg"), Mark Ringgenberg ("Ringgenberg"), and Xavier Rucker's ("Rucker") (collectively, the "Moving Defendants") Motion for Judgment on the Pleadings [Docket No. 47].  For the reasons set forth below, the Motion is denied.

## II.  BACKGROUND

On the night of May 30, 2020, while Plaintiffs were protecting a family business that had recently been looted during the civil unrest following George Floyd's murder, officers from a Minneapolis Police Department ("MPD") SWAT unit shot at Plaintiffs with less-lethal munitions and sprayed them with tear gas.  Moving Defendants were members of the SWAT unit who were present during the incident, but are not alleged to have used force themselves during the incident.  In this lawsuit filed under 42 U.S.C. § 1983, Plaintiffs assert a claim against the Moving Defendants for failing to intervene to stop allegedly unlawful force used by other officers.

The incident occurred five days after George Floyd's murder by an MPD officer.  Am. Compl. [Docket No. 31] ¶¶ 1, 32.  In the days following Floyd's murder, widespread protests broke out in Minneapolis, with looters and arsonists damaging many area businesses.  Id. ¶¶ 33-34.  A nighttime curfew went into effect in Minneapolis at 8:00 p.m. on May 30, pursuant to orders issued by Minnesota Governor Tim Walz and Minneapolis Mayor Jacob Frey.  See Minn. Exec. Order No. 20-65 (May 29, 2020); Am. Minneapolis Emergency Reg. No. 2020-2-1 (May 29, 2020).

That night, Plaintiffs were maintaining a security presence at a Stop N Shop gas station and convenience store on Lake Street in Minneapolis.  Am. Compl. [Docket No. 31] ¶¶ 1-2, 90.  Plaintiffs are friends and relatives of the gas station's owner and were protecting the business

2

from further harm after it had been broken into and looted on a previous evening. Id. ¶¶ 1-2, 90-91. Plaintiffs socialized, barbequed, and monitored the area, which was allegedly calmer that night than in previous days. Id. ¶¶ 2-3, 93.

Multiple law enforcement agencies were mobilized around Minneapolis that evening, including MPD SWAT Unit 1281. Id. ¶¶ 3, 45-46. The Unit was deployed to provide less-lethal weaponry support for other units. Id. ¶ 46. The team, supervised by Defendant Andrew Bittell, consisted of eight total members, including the three Moving Defendants. Id. ¶ 45. The Unit operated in an unmarked white van, which appeared to be a civilian van when the van's concealed emergency lights were not activated. Id. ¶¶ 45, 79.

During their shift, Bittell met with Unit 1281 officers by the van a few blocks from Lake Street and instructed his team: "We're rolling down Lake St. The first f***ers we see, we're just handling them with 40[mm rounds]." Id. ¶ 76.[1] Bittell asked his team if that was a "good copy." Id. Some of the Unit 1281 officers responded with laughter. Id.

As officers loaded into the van, the driver, Defendant Michael Osbeck Jr., asked Bittell what they were doing with the people on Lake St. Id. ¶ 77. Bittell, who was in the front passenger seat, responded, "Shooting them with 40[mm rounds]." Id. An officer in the back of the van laughed. Id.

Unit 1281 proceeded to lead a caravan of marked squad cars down Lake Street. Id. ¶ 78. The Unit's unmarked van drove without its emergency lights activated. Id. Bittell directed the other squad cars to refrain from using lights or sirens and described the operation as "a slow jog in the park finding people." Id. ¶ 80.

---

[1] Forty-millimeter rounds are "less-lethal" munitions that have the potential to cause grievous injury or death when used in certain circumstances. Id. ¶ 58.

Three minutes later, an officer in the back of the van asked Bittell to "get the [marked squad cars] to slow down and stay behind us so we can use the [40mm launchers]." Id. ¶ 82; Humayan Decl. [Docket No. 52] Ex. 1 at 22:45:39.[2] Bittell radioed the other squad cars and told them to slow down and stay behind the van. Am. Compl. ¶ 82; Ex. 1 at 22:46:13.

Approximately 20 seconds later, as Unit 1281 approached the gas station being protected by Plaintiffs, Bittell pointed to the station and said, "Right in here . . . right here in this parking lot, 17th and Lake," and told Osbeck to speed up the van. Am. Compl. ¶ 87; Ex. 1 at 22:46:38. Osbeck accelerated toward the gas station. Am. Compl. ¶ 88. Officers saw Plaintiffs near the gas station engaging in peaceful conduct. Id. ¶¶ 2, 85, 93.

Twelve seconds after pointing out the gas station, Bittell directed the officers to shoot at the civilians there, yelling, "Let 'em have it, boys, let them have it!" Id. ¶¶ 87, 105; Ex. 1 at 22:46:50. Two seconds after Bittell shouted the order, officers sitting closest to the open sliding passenger door of the van shot 40-mm rounds at Plaintiffs from the van while it was still moving, and one officer yelled, "Get outta here!" Ex. 1 at 22:46:52. Officers fired more 40-mm shots from the van five seconds later while an officer yelled, "They're breaking into a building." Id. at 22:46:57. The officers then got out of the van and began walking toward the gas station. As they did so, another 40-mm shot was fired. Ex. 3 at 22:47:14. Plaintiffs did not know who was shooting at them and thought they were being attacked with lethal weapons. Am. Compl. ¶¶ 97-100. Three of the Plaintiffs were struck with the less-lethal rounds. Id. ¶¶ 101, 106, 107.

Two Plaintiffs near the gas pumps surrendered to officers by falling to the ground. Id. ¶¶ 109-11. One or more officers sprayed these Plaintiffs with chemical spray. Id. Officers then

---

[2] Further references to exhibits attached to the Humayan Declaration will be cited simply as "Ex. 1," "Ex. 2," etc.

ordered Plaintiffs to go inside the gas station, and the Unit returned to the van and continued down Lake Street.  Id. ¶¶ 113-14.

Plaintiffs filed this § 1983 lawsuit in September 2023.  The Amended Complaint includes a claim against Moving Defendants for failure to intervene to prevent the use of excessive force by other officers.  Id. ¶¶ 297-306.  Moving Defendants move for judgment on the pleadings on this claim.  They argue that the body worn camera ("BWC") videos from the incident show that Moving Defendants did not observe excessive force being used on the Plaintiffs and had no realistic opportunity to intervene.  Moving Defendants also argue they are entitled to official immunity because their conduct did not violate clearly established law.

### III.  DISCUSSION

**A.  Standard of Review**

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6).  Buckley v. Hennepin Cnty., 9 F.4th 757, 760 (8th Cir. 2021).  The pleadings are construed in favor of the nonmoving party, and the facts alleged in the complaint must be taken as true.  Id.  To survive a motion to dismiss, the complaint must relate "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

When considering a motion for judgment on the pleadings, a court may rely on matters of public record and materials "necessarily embraced by the pleadings."  Buckley, 9 F.4th at 760.  Videos of an incident are necessarily embraced by the pleadings and are properly considered.

5

Ching as Tr. for Jordan v. City of Minneapolis, 73 F.4th 617, 621 (8th Cir. 2023). A court need not accept a plaintiff's version of events that is "blatantly contradicted" by a video of the incident. Scott v. Harris, 550 U.S. 372, 380 (2007). However, "inconclusive" video evidence must be construed in the plaintiff's favor. Raines v. Counseling Assocs., Inc., 883 F.3d 1071, 1074-75 (8th Cir. 2018); accord Thompson v. City of Monticello, 894 F.3d 993, 998-99 (8th Cir. 2018).

### B. Plaintiffs' § 1983 Claim Against Moving Defendants

"Section 1983 imposes liability for certain actions taken 'under color of state law that deprive a person of a right secured by the Constitution and laws of the United States.'" Dossett v. First State Bank, 399 F.3d 940, 947 (8th Cir. 2005), (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 931 (1982)).

Qualified immunity shields government officials from § 1983 lawsuits and liability "unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." LaCross v. City of Duluth, 713 F.3d 1155, 1157 (8th Cir. 2013). "To overcome qualified immunity at the pleadings stage, a plaintiff must plead facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" Partridge v. City of Benton, Arkansas, 929 F.3d 562, 565 (8th Cir. 2019) (internal quotation marks and alterations omitted).

#### 1. Violation of a Constitutional Right

Plaintiffs allege that Moving Defendants violated their Fourth Amendment rights by failing to intervene to prevent or limit the other officers' use of excessive force. It is objectively unreasonable for an officer to use more than *de minimus* force when a person is not suspected of a serious crime, is not threatening anyone, and is not fleeing or resisting arrest. Mitchell v.

Kirchmeier, 28 F.4th 888, 898 (8th Cir. 2022) (citing cases). The use of less-lethal munitions or chemical spray on such a person constitutes excessive force. Id. at 898-99; Tatum v. Robinson, 858 F.3d 544, 550-51 (8th Cir. 2017). Plaintiffs allege that the other officers attacked them with less-lethal rounds and chemical spray while Plaintiffs were engaging in peaceful conduct in a relatively calm area, and that Moving Defendants had a duty to intervene to prevent the harm from occurring.

A police officer who fails to intervene to prevent the use of excessive force may be liable under § 1983 for a Fourth Amendment violation where "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." Robinson v. Payton, 791 F.3d 824, 829 (8th Cir. 2015) (quoting Nance v. Sammis, 586 F.3d 604, 612 (8th Cir. 2009)).

### a. Reason to Know Excessive Force Would be or Was Being Used

Moving Defendants argue that they did not have reason to know that excessive force would be used on Plaintiffs because Bittell's comments about shooting people on Lake Street were made several minutes before the gas station incident and while the officers were in a different location. Moving Defendants stress that the reasonableness of the force used must be judged by the information known to the officer at the moment the force was used, and that Bittell's remarks were too distant in time and place from the moment the force was used. Defs.' Reply [Docket No. 61] at 7 (citing Graham v. Connor, 490 U.S. 386, 397 (1989)).

This argument lacks persuasion because the information allegedly known to Moving Defendants at the moment the force was used was not limited to Bittell's remarks. At the moment the shooting occurred, Moving Defendants allegedly knew that Bittell had announced a plan to the Unit to shoot 40-mm rounds at civilians on Lake Street without warning, the Unit was

driving down Lake Street with the van's emergency lights off, Bittell had instructed the squad cars behind the van to slow down so the launchers could be used, officers saw Plaintiffs near the gas station engaging in peaceful conduct, Bittell pointed to the gas station and told the driver to speed up, and officers opened fire on Plaintiffs without warning. These alleged circumstances are sufficient to support a reasonable inference that the officers had reason to know that excessive force would be used on Plaintiffs.

Moving Defendants also argue that the BWC video footage shows that Moving Defendants did not have a clear view of what the other officers were aiming at when the shooting began, because Moving Defendants' views of the street from inside the van were obstructed by other officers sitting or standing in front of them in the van. Moving Defendants thus contend that they could not see enough to assess whether the circumstances at the gas station justified the use of 40-mm rounds. They also argue that the BWC videos show that Moving Defendants did not observe the alleged use of chemical spray on the two Plaintiffs who were near the gas pumps, because Moving Defendants were not near the gas pumps and were engaged with other individuals at the time the two Plaintiffs were allegedly sprayed.

Although a court need not accept allegations that are contradicted by "irrefutable video evidence," it must construe "inconclusive" video evidence in the plaintiff's favor. Raines, 883 F.3d 1075. Here, the BWC videos do not conclusively show what Moving Defendants personally observed. Body-worn cameras are worn at chest level and face only forward. As such, they capture events from a different perspective and field-of-view than what an officer actually sees. While the videos show that Moving Defendants' body-worn cameras were at times blocked by other officers sitting or standing in front them in the van, the videos do not conclusively establish that the Moving Defendants' actual views were also blocked. Further

8

discovery is required to determine what the Moving Defendants personally observed when the 40-mm rounds and chemical spray were used on Plaintiffs.  At this stage, Plaintiffs are entitled to the reasonable inferences that Moving Defendants could see the gas station from the van's windows and open door during the seconds before the shooting started, and that after they exited the van they could see the area by the gas pumps where two of the Plaintiffs were allegedly sprayed.

Accordingly, Plaintiffs have plausibly alleged that Moving Defendants had reason to know that excessive force would be or was being used on Plaintiffs.

### b. Opportunity and Means to Prevent Harm

A police officer has a duty to prevent the use of excessive force where the officer is aware of the excessive force and "the duration of the episode is sufficient to permit an inference of tacit collaboration." Krout v. Goemmer, 583 F.3d 557, 565 (8th Cir. 2009).

Construing the pleadings in the light most favorable to Plaintiff, the Amended Complaint alleges facts giving rise to a reasonable inference that Moving Defendants had the opportunity and means to prevent the harm from occurring.  Moving Defendants were in the van when officers discussed and began executing the plan to shoot 40-mm rounds at civilians on Lake Street without warning.  Am. Compl. ¶¶ 77, 79-83.  In the minutes leading up to the shooting, Moving Defendants had the time and opportunity to voice their opposition to this tactical decision, but they allegedly took no action to deescalate the situation or prevent the other officers from using force.

The Amended Complaint and BWC footage also support a reasonable inference that Movants had the time and opportunity to intervene during the moments when the gas station was identified and the attack was imminent.  Approximately 10 seconds elapsed between when Bittell

first pointed out the gas station and when he gave the command to shoot. Ex. 1 at 22:46:39–22:46:50. Moving Defendants allegedly saw Plaintiffs and others standing peacefully near the gas station, but made no attempt to stop the shooting. Shots were fired two seconds, five seconds, and 24 seconds after the command was issued. Id. at 22:46:52-22:47:14. Moving Defendants did not attempt to intervene during this time.

Moving Defendants argue that they did not have the opportunity to intervene because the shooting occurred within a span of a few seconds. They cite several cases for the proposition that an officer has no reasonable opportunity to prevent another officer's attack when the attack occurs quickly and lasts only a few seconds. See Defs.' Mem. Supp. Mot. [Docket No. 49] at 18-19 (citing cases). However, none of the cases cited by Moving Defendants involve circumstances where the attack was planned in advance and was being executed according to plan at the time the force was used.

As to the alleged use of chemical spray on two of the Plaintiffs, the timing and duration of those alleged attacks is uncertain. Moving Defendants argue that the BWC videos show that the alleged chemical spray attacks on Plaintiffs occurred too far away from where Moving Defendants were positioned at the gas station to allow them to see the alleged attacks or have an opportunity to intervene. The BWC videos are not conclusive on this issue, and further discovery is needed to determine whether Moving Defendants were close enough to see and stop the alleged attacks.

Moving Defendants also argue that they lacked the opportunity to intervene to prevent the use of chemical spray because they were engaged with other individuals on the scene. The Eighth Circuit has held that an officer who is occupied with a volatile individual does not violate clearly established law when he chooses not to leave that individual to intervene in another

10

officer's use of excessive force against a different individual. Robinson v. Payton, 791 F.3d 824, 830 (8th Cir. 2015). The BWC videos, when viewed most favorably to Plaintiffs, do not suggest that any of the individuals at the gas station were volatile or non-compliant. The Court declines to resolve this fact issue in Moving Defendants' favor at the pleadings stage. Accordingly, Plaintiffs have plausibly alleged that Moving Defendants had the opportunity and means to prevent the harm from occurring.

Construing the facts alleged in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs have plausibly alleged that Moving Defendants violated the Fourth Amendment by failing to intervene in the other officers' alleged use of excessive force. To grant judgment on the pleadings at this early stage would require the Court to rely entirely on inconclusive evidence from the BWC videos. Further discovery is needed before the factual issues raised by the videos can be resolved.

### 2. Clearly Established Right

To overcome qualified immunity, Plaintiffs must also show that the right in question was clearly established at the time of the challenged conduct. "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quotation marks omitted). A court must not define clearly established law "at a high level of generality," but must instead consider the specific facts of each case. Plumhoff v. Rickard, 572 U.S. 765, 779 (2014). The "crucial question" is "whether the official acted reasonably in the particular circumstances that he or she faced." Id. Although there need not "be a case directly on point, existing precedent must place the lawfulness of the particular action beyond debate." City of Escondido, Cal. v. Emmons, 586 U.S. 38, 44 (2019).

At the time of the incident in May 2020, existing Eighth Circuit precedent had clearly established that using more than *de minimus* force where a person is not suspected of a serious crime, is not threatening anyone, and is not fleeing nor resisting arrest constitutes excessive force.  See Mitchell v. Kirchmeier, 28 F.4th 888, 898-99 (8th Cir. 2022) (citing cases from 2019 and earlier).  It was also "clearly established that an officer who fails to intervene to prevent the unconstitutional use of excessive force by another officer may be held liable for violating the Fourth Amendment."  Nance, 586 F.3d at 612.

Here, the Amended Complaint alleges that Moving Defendants were with Unit 1281 when the tactical decision was made to shoot 40-mm rounds without warning at civilians on Lake Street, and Moving Defendants failed to deescalate the situation or try to stop the other officers in the Unit from shooting.  The Amended Complaint also alleges that Moving Defendants observed officers using chemical spray on two Plaintiffs who had surrendered to officers and did not intervene to prevent the harm.  Under these alleged circumstances, it would be clear to a reasonable officer that this conduct violated a constitutional right.  See Nance, 586 F.3d at 612 (holding officer could be liable for his "failure to take action to deescalate the situation if he had an opportunity and means to do so").

Because the Amended Complaint plausibly alleges that Moving Defendants violated a constitutional right that was clearly established at the time of the challenged conduct, they are not entitled to qualified immunity.

### IV.  CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants Nathan Sundberg, Mark Ringgenberg, and Xavier Rucker's Motion for Judgment on the Pleadings [Docket No. 47] is **DENIED**.

BY THE COURT:

Dated: May 16, 2024

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT COURT